## Case No. 344.

### The AMY WARWICK.

### [2 Spr. 160.][1]

District Court, D. Massachusetts. May, 1862.

AUCTION OF PRIZE CARGO—COMMISSIONS OF AUCTIONEER.

[The cargo of a prize ship was sold at public auction. The sale was successful in its results, $145,393.04 being realized. Care, diligence, and labor proportionate to the importance and magnitude of the sale were exercised by the auctioneer, embracing labor in the preparation of samples, sorting and cataloguing the merchandise in lots, prior to the sale. Held, a commission of one-half of one per cent. was a suitable compensation for his services.]

In admiralty. At the sale of the Amy Warwick's cargo, which brought, $145,393.04, the auctioneer, N. A. Thompson, charged, for his services, a commission of two and one-half per cent., amounting to $3633.26. This charge was objected to by Mr. Dana, the United States Attorney, and by the counsel for the claimants, as excessive; and

[1][Opinion and statement reprinted from 2 Spr. 160, by permission.]

Sprague, J., ordered evidence to be taken as to the custom of auctioneers and merchants in similar cases. On the return of this evidence, the question was argued by Mr. Dana, and by counsel for the auctioneer.

R. H. Dana, Jr., U. S. Atty., for the United States and captors.

E. Bangs, for claimants.

Chandler & Shattuck, for N. A. Thompson.

SPRAGUE, District Judge. The question is, what compensation shall be allowed to the auctioneer. It is agreed that the marshal made no special contract with the auctioneer as to his compensation. It is suggested that there is an implied contract between them, by which the auctioneer is to receive the commission usually paid where no special contract is made. I cannot accede to this position. The marshal stated to Mr. Thompson that he had no authority to make any contract with him as to his compensation, for the reason that the court must finally decide on all charges; and Mr. Thompson so understood it. If there was no authority to make a contract, that excludes an implied contract as well as an express contract. There can be no contract binding the court as to the pay of the auctioneer; for it is the duty of the court to pass upon it, as a judicial question. The only point to be decided, therefore, is, What is a suitable compensation? To determine this, I have had evidence taken as to the usual or market rates of payment. The result of the testimony seems to be this: Where the auctioneer is also consignee of the property, and acts, in fact, as commission merchant, receives the merchandise, is responsible for its custody and preservation, decides on the manner, time, and terms of its sale, sells it and collects the money, he charges two and one-half per cent. If he guarantees the payments, he charges more. There are also some special cases, such as the sale of wrecked goods, where the auctioneer takes the charge of them, sees to the transportation, does many of the duties of consignee, and where the duties of auctioneer, from the state of the goods, are onerous, in which he charges two and one-half per cent. But if he performs the simple duties of an auctioneer of property in the custody of another, and there is nothing extraordinary in the condition of the property, the rule is to charge one per cent. But, if the property is not of sufficient value to make one per cent an adequate compensation, a round sum is charged. And if the value is great, as if it amounts to $50,000, or $100,000, it is customary to make a bargain beforehand; in which case, the rates agreed are often one-half or even one-quarter of one per cent. All the witnesses, those called by the auctioneers as well as those called by the claimants and captors, said they had never known a case where merchandise of one kind, as tea, coffee, or rice, of the value

of $100,000 or upwards, had been sold by auction to a private person, when as much as one per cent had been paid. Special bargains were always made, and the rates would depend on circumstances; but in such cases, for the ordinary duties of auctioneers, from one-half to one-quarter of one per cent. would be a compensation, for which the most capable and trustworthy auctioneers would be glad to make the sales. Real estate and ships are not sold on a commission, but for round sums, and usually for sums, if the value is large, which would range from one-quarter to one-tenth of one per cent. In those cases, the duty is simple, and the auctioneer does not usually collect the money. Certain auctioneers have testified that, in selling for marshals heretofore, they have always charged two and one-half per cent., and for navy agents five per cent.; but as they admitted, on cross-examination, that they had always paid back one-half of their commissions to the officers employing them, I may properly disregard that evidence altogether. It is proper that I should add that these witnesses said they had not sold for any persons now in office, and under my jurisdiction. There was also evidence that the auctioneer who sells all the prizes in New York charges two and one-half per cent.; but this was only in the form of a letter, read by consent, with no cross-examination, and at most is only the charges of one person in another city. The result of all the evidence, to my mind, is plainly this: In the sale of merchandise, where the duties are simply those of an auctioneer, if the value is small, a round sum is charged; if very large, a special bargain is made; and in ordinary and average cases, the custom is to charge one per cent. It remains only to inquire, What were the duties performed in this case?

This cargo was coffee. It was in the custody of the marshal in a store-house. The marshal is responsible for the care and custody until the goods are turned into money, and is paid liberally for it. The auctioneer has not only no charge or custody, but cannot interfere with the goods in any manner beyond what is necessary to effect a good sale, and then subject to the marshal's care and custody. The auctioneer exercises no judgment as to the mode, time, or terms of the sale. These are determined by the court. The court directs the sale to be by auction, the terms to be cash, and the time of the sale is fixed by the warrant. The auctioneer assumes no responsibility on these points. He collects the money, it appears; but it is cash, and the duty is simply to receive and pay over to the marshal. But there were duties which the auctioneer performed, which did require time and attention, prior to the sale. He visited the stores four or five times, spending a couple of hours each time; and his partner visited them as many times, spending as much time on each occasion; and

their clerk made several visits there. The object of these visits there was to arrange the coffee into lots, label the lots, obtain samples of each, arrange the samples and send them to merchants here and in New York, prepare catalogues of the lots, and see to their printing and distribution. For the labor of others in these duties, separate charges are made, including all the printing, &c. There were some one hundred and seventy lots. The sale itself occupied from an hour to an hour and a half. The successful bidders could take their choice of lots, and take from one lot to the whole. There were, in fact, six purchasers in all. After the sale, the bills were made out, and the money collected from each purchaser, in cash or treasury notes, and paid over to the marshal. The sale was a successful one, and entirely satisfactory to the captors and the claimants; and it is understood that the auctioneer brought to bear diligence, attention, and the skill of his occupation. The amount was large, and attracted attention, and the consequent responsibility is to be paid for.

I desire to have it understood, as this case will tend to fix the rule in this district, that I treat the sale as one of magnitude, entailing proportionate care and responsibility, attended with labor beforehand in preparing samples, sorting, cataloguing, &c., which employed what might amount to the time of the auctioneer, his partner, and clerk, for the better part of three or four days, and one in which diligence and skill were exercised, and a sale entirely successful in its results. On the other hand, the duties were only those of an auctioneer, with such limitations on the exercise of discretion as I have noticed. I cannot think of allowing any such sum as has been charged,—two and a half per cent., amounting to over $3,600. I desire to allow such a sum as, followed in future cases, will secure the services of the most skillful and responsible auctioneers, who shall feel themselves liberally paid. The interests of all, as well as justice to the persons employed, dictate such a policy. I am satisfied that in this case a commission of one-half of one per cent., amounting to $726.96, will be such a compensation. It is accordingly allowed, in lieu of the charge made. At the same time, I am called upon to settle the allowance to the same auctioneer for selling the prize cargoes of the steamer P. C. Wallis, and the schooners Southern Independence, Victoria, and Charlotte. His charges are two and a half per cent. The duties performed are rather less in time and care than in the case of the Amy Warwick's cargo. Having some reference to the amounts of the respective sales, I assign the compensation as follows: Southern Independence and Victoria, one-half per cent. each; Charlotte, five-eighths per cent.; P. C. Wallis, one per cent. The result of all the cases is as follows:—